The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. The Court is in session. We'll be calling our second case first. The first case today will be number 22-1195 United States v. Reynaldo Rosa-Borges and number 22-1218 United States v. Reynaldo Rosa-Borges. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good morning. I'm Kevin Varman. I represent Reynaldo Rosa-Borges, the accountant. May I present the evidence for the court? I'm sorry. Three minutes or two minutes? Two minutes. Yes, you may. May it please the Court. When Mr. Rosa signed the government-drafted pre-agreement, as far as Mr. Rosa was concerned, the agreement's purpose was to prevent the government from arguing that he deserved a massive, unlawful grand possession on March 29, 2021, but then the government's sentencing advocacy induced the court to mistakenly base its sentence on unproved allegations that were beyond March 29, alleging that Mr. Rosa was responsible for 99 additional bullets taken from his brother's presence at their aunt's home on a separate date from the arrest. I'd like to first explain why the hearsay-dependent 99-bullet allegation improperly fed the court's erroneous sentence increases. Then I'd like to touch on why the pre-agreement reasonably precluded their introduction, and finish by discussing why the colossal, aggregate 9-year sentence is excessive, especially in light of Amendment 821's retroactive reduction of Mr. Rosa's guideline sentences. Starting with the reliance on the additional 99 bullets that were alleged to have been a constructive possession on a separate date, in a separate place, under extremely questionable circumstances. The adverse hearsay statements relied on by the court are unreliable by every measure this court was, from Taveras to Colón-Maldonado and beyond, and the record shows beyond doubt that paragraph 13 and the disputed revocation allegation depend on adverse hearsay. The court's pronouncement comes directly from paragraph 13, which we see at the supplemental appendix pages 35 to 36, and it finds its way into the sentencing pronouncement appendix 98. Can I ask you a question though? Is there anything in the plea agreement that actually would have precluded the government from presenting the evidence seized at your client Oz's house? For instance, even though those additional rounds were included in the stipulated facts, they still were part of the count that your client was guilty to, right? So wouldn't they be somewhat appropriate? This wasn't a speaking indictment, so there was a count that said on or about March 29th and March 30th there was this possession, and the facts were expressly agreed to at the change of plea hearing, and it's context that shows that the government was precluded from relying on this material. Sorry, context? Yes. Not like explicitly. I'm sorry? I thought the question was if there was anything explicitly. They were explicitly removed from the government's alleged facts. There had already been a preliminary revocation hearing where their unreliability was front and center, and you see that removal. That's in the supervised release case. I'm sorry? That's in the supervised release case. That's correct. So is there anything in the plea agreement to the current operative case that would preclude reliance on the March 30th facts? So did the plea agreement come out and say the government will not rely on these? Yes. But we've supplied the court context. That's why we included the Lopez case where the government expressly carved out a separate allegation of the gun possession and said we reserve the right to prove this at sentencing. There's no reasonable reading of this plea agreement, especially where the government stands up and tells the court that we reserve the right to use this in support of our sentence. So was there an absolute bar? Was there no situation where this could have come up? Not necessarily, but the context shows this was a sentence agreement, and we can reasonably look to the justice manual for anyone bargaining with the government to understand what the most meticulous standards of promise and performance require the government to abide by. Here, when your client objected to the discussion of the March 30th evidence in the PRR, what was the government supposed to do in response in your view? So it's there, you object to it, and now the government has to decide what to do. What did you think that you should have done in that circumstance? So just as a starting point, this isn't an anticipatory breach claim. So if another party is breaching, you can call that out before the completion of the agreement. At this point, once the government asked for that inclusion, they were already in breach at that point. Now at some point, this court has… So you're saying the breach was earlier when they asked the probation officer to draft a paragraph? The breach began, and then we see a pattern of conduct which undermines the plea agreement. And I think one of the most important things to stress in this case is this is a plea agreement where if the government asked for it a day longer than the middle of the range, then it breached the agreement. So this… I'm lost here. When do you think the first breach occurred? So the first breach occurred is the government's objection to the plea agreement not including what the government supplied for paragraph 13. I'm sorry, to the PSR not included? That's correct. And we see evidence of that when we get to the… And you say that was the first breach, but nothing in the plea agreement that you've identified prohibited it. Judging by your honest question, I think that… Let's be clear. You're making very serious accusations about professionalism of prosecutors, correct? These are very serious accusations. And we're taking them very seriously. We are taking them very seriously. But if what you want to talk about is what is implicit in the agreement and what is contextual about the agreement, then you're on much thinner ice. That's why I'm asking about there not being an explicit prohibition on getting into the March 30th materials in the plea agreement. Because you're saying the government breached by saying that should be part of the PSR. That's right, Your Honor. And this is… It's not just context. It's these… Any ambiguity… The government hasn't argued. It's construed against the government. What ambiguity are you talking about? In terms of whether the lack of a carve-out, which is why we supplied the Lopez case, so that the government should have carved this out if it was going to interpret its performance. Performance can't be an entirely subjective measure. That's why I'm asking you about what's explicitly in the agreement. So the answer is that explicitly it's not there, and the court needs to look to context. And the circuit case law, I'll go back to Santabella, looks to context and applies the strictest standards to the government. But in any case, when we look to this material, and the breach and the unreliable material go hand-in-hand, because we look to this material supplied to the court, we see in the Rule 32 proceedings, we don't see any findings that the government refers to on appeal. We see a justification, which the government doesn't rely on, which is supplied by probation. And I think that we're agreed that the reasons that the probation officer gave for including this material are not valid. They didn't resolve the Rule 32 dispute, and there wasn't a ruling that could remotely say what my opponent alleges that the finding was based on. There wasn't a finding, there couldn't have been a reliable finding, and it becomes even more unreliable when we get to the Rule 32.1 proceedings, where we see the government really expressly abandoning an attempt to rely on this, expressly asking the court to not revoke after really inviting an error from the court and saying, there's no confrontation right in revocations. And we see the government trying to walk this back and expressly telling the court, well I'm paraphrasing, but essentially the Rule 32.1 Morrison-Townsend test is a rule for admitting evidence, and if it's adverse hearsay and the confrontation right can't be dispensed with, there's no argument that it can be here, then the material doesn't come in. We see the government saying, oh, he's saying that he should be able to cross-examine, for example, his brother, the police officer, that's Appendix 259. Everyone understands what the dispute is about, and the evidence doesn't suffice for a judge. Suppose the brother's not there. The government just executes the search warrant at the aunt's house, which has two residents, right? The aunt and the defendant who finds the ammunition and magazines there. Is that enough for a judge to incur possession for purposes of either sentencing or supervised Well, even under hypothetical, does it remain true that other people have access to come and go from the house? That's your theory? That there's a state that you don't exclude all possible? Well, one of the reasons we cited in our reply this case where a conviction is reversed where there's a laptop with explicit images in an open family room where other people have access, we have a reasonable doubt that none of this does. I don't think the standard necessarily makes a difference. I don't think it makes a difference at all. Because if this material is unreliable, and I think even the hypothetical where we have the government really acknowledging in the second proceeding that this material is improved, then I think you can take it out as a concession. I'm out of time on that. I'd like to follow up on, I guess, a more fundamental question facing us in this case and perhaps a couple of others. At least my understanding of the law, the agreements and breaches and so on, we generally presume, courts generally presume, that the government's recommendation is a very important input in the sentences. Right? That's correct. And basically, so the government's recommendation is even, as you say, a day off of what they promised. We would presume prejudice, et cetera. I guess my question, everybody here is asking us to pay particular attention to the practices and preferences and views of Judge DeSoto in this case and others. And I guess my question is, in these sorts of cases, in front of this judge, how much is the government recommendation actually worth? And how much should we worry about how precise the recommendation is going to be? You're telling us, for example, that putting certain information in front of Judge DeSoto is going to lead him to an upward variance. I'm not sure who's leading whom when it's basically based enough. And I'm interested in your thoughts on this problem. I would provide the court two thoughts. The first is most specific to this case. So in this case, we're not asking the court to look at anything abstract. What Judge DeSoto based the upward variance on was largely the allegations that there were these 99 additional rounds on a different date. And then the government, in its briefing, it goes so far as to say that everyone who litigates in this district is essentially on notice, that the judge would apply a Kimbrough variance based on the number of admonitions that were present. And the government doesn't deny knowing that that would be the basis. In fact, it asks the court now to affirm based on this additional material that it submitted in breach of the plea agreement. The broader issue is, I think your Honor's point is a very good one. There's a case of Gonzalez-Berman. I'm not sure who cited it in this case. It's definitely cited between this one and Bojita Ramos. That was one of the early cases, and there's been an interplay with the government and the courts offering this theory of Puerto Rico population targeting upward variances. So there is this energy over time, which is in the cases, and which I think came to a head in the Florida Gonzalez-Berman opinion. And there's this interplay of basically an ideological view that attributes any individual possession, simple possession of a firearm, and connects that somehow to a belief that people in Puerto Rico, and it's an invidious basis of sentencing. It can't be. I'm sure we'll talk about that later. I have not yet seen any indication of any invidious discrimination. So... Your Honor, I... Your Honor, I think it's ideological. I see policy differences on how criminal laws are being enforced. I understand that, and this isn't my personal view. In the Florida Gonzalez-Ombar case, the NAACP Legal Defense Fund submitted a brief explaining that essentially, and what the government refers to as high crime area punishments, they explain that when you do high crime area policing, when you do high crime area punishments, then that's a proxy for punishment based on characteristics. We've never alleged in this case or any of these other cases that any individual has animus toward anyone. But... And you don't have to go beyond the First Circuit's case law from the Florida March You focus too much on the community and not enough on the individual, and you've committed a procedural sentencing. Did you briefly want to address the sort of Kimbrough problem of this case? Sure. The Kimbrough issue. Rob, this case... I should say maybe so-called. Sure. While this case was being briefed, the Ombar case in Florida, I'm sorry, in Florida Gonzalez was pending. Now, we have essentially a per curiam decision in that case, and two, they're either concurrences, I think they're two concurrences. The first concurrence is the three judges who wish to overrule the status quo in the First Circuit, who wish to overrule Rivera-Verrillos, who wish to overrule Caraquillo-Sanchez, and Garcia-Perez, and even going back to Zaldivar-Garcia, which the government alleged was not properly reflecting Supreme Court case law. The second concurrence, in our opinion, explains the status quo, and I think it explains very well that a substitute... It was referring to Caraquillo-Sanchez, where it was one step before this, because at the time it was the government that was proposing that the rationale for sentencing could be kind of rebranded as a Kimbrough variance. Whether it's the government or the court itself, the sentencing court after this, I think, observed those cases and called this a Kimbrough variance. Now, the Kimbrough variance here, the alleged reason is based on ammunitions. I think that 2K2.1 is a very mature guideline, if anything, and overstates culpability. This is somebody for a simple possession to accept on base offense level 22. But I think the same reasoning in the second opinion of Florey-Montaz applies, and that Here, I think you could put solely by ammunition, a couple boxes of ammunition. It does not reflect a policy-based beef with the commission's reasons for setting the range. It simply reflects a decision that the case is not a mine run, and so is not one for which the baseline range was established. And then there's a warning. Otherwise, if it were as the government suggests, then one could call any variance sentence an exercise of Kimbrough authority, which would make the sentence reverse-proof. So I think that Kimbrough, the government relies on it significantly. The government relies on the number of ammunitions and the procedural reasonableness claims. It's a dead letter in this case. So how does that not turn the guidelines into nearly mandatory guidelines, again, if there's 6th Amendment problems? It sounds like you want us to go back to the days of the marches. And I frankly, I'm astonished, given my years on the bench, to hear a defense counsel so devoted to the guidelines, so left-big-heartened the cases I'm hearing this week. When I started litigating in the First Circuit, Your Honor, I had difficulty with how the case law has developed here and how we're trying to claw down from the excessive sentences. And I don't think that it's making them mandatory. It's – and this is – I think that there's some language in Florida Guantanamo, also, that this is about when it's the up, the up-only escalator, focused on deterrence and all of these things that are excessive, and they're not allowing individualized… You don't, Michelle, think the arguments that you're making could be made by the government when a defendant is sentenced by a particularly consistently lenient judge? I don't think so, but it would depend on the facts, because one of the things that Kimbrough points out is judges know particular defendants better. So if you're in 3553A1, then you have a lot more discretion to work with. And so I think that – and one of the things that I think saves this from Your Honor's concern is that when you're looking at the empirically based range, which, again, this one got ratcheted up and ratcheted up, it wasn't empirical, so it's – if anything, it's excessive. But if the judge's ground is based on 3553A2, which expressly is A2, A, B, and C, then it's those sort of distinct institutional strengths which are at issue and which are at issue here. So the government would have a much harder time to make that whenever the sentence is based on individual factors. Thank you. Thank you, Counsel. At this time, if Counsel for the Government would introduce himself on the record to begin. Good morning, Judge Montecalvo. May it please the Court that I have a warrant signed on behalf of the United States. Mr. Rosa seeks to vacate his sentences in two separate but related proceedings. There are numerous preservation errors with his arguments, and this Court should reject all his claims of errors either because of preservation or on the merits, but because they're also factual and legal issues. I will begin with what Mr. Rosa claims is his main argument on appeal, which is that the government breached the plea agreement. But as my friend rightfully conceded during his argument, there is no express statement in the plea agreement saying that the government will not provide any additional facts to the Court. And indeed, this Court has rightfully stated in numerous decisions, the one we cite in our brief is Miranda Martinez, that the government has an affirmative and unwavering duty to provide relevant sentencing facts to the Court, and that duty may not be abridged by plea agreement. And that makes sense. The reason why the March 30th facts were not included in the plea agreement is that the defendant would not stipulate to them. If it became the law of this circuit that if a defendant does not stipulate to facts, the government may not produce them to the Court, then there's a simple one-step plan for any defendant to prevent aggravating facts from reaching the Court. You just don't stipulate. Can I ask you a sort of different question, still in that same breach area, not having to do with those facts, but when you look at the sentencing hearing transcript, the prosecutor gets up and says, you know, we stand by our recommendation, and then immediately says, but we don't credit the defendant's telling of how he possessed the weapon, only briefly. And I'm wondering if that, if we should look a little more carefully at that sentence. And when you look at some of the case law, you know, they talk about, is the conduct impermissibly equivocal, apologetic, or begrudging? And I'm wondering what your thoughts are on that. Specifically as to that sentence. Sure. First of all, I will note that although the defendant then objected to a plea breach, he then provided reasons for the plea breach, and one of the reasons was not the Court, sorry, was not the government calling into question his narrative of his gun possession. But let me now remain perfectly clear. If you look at the stipulation of facts in the plea agreement, it did not set forth that negating account. The defendant in the stipulation of facts simply agreed to his knowing possession of a firearm. And in August of 2021, when he said, I'm not going to stipulate my possession of the ammunition and extra magazines found in my home, the government first off said, okay, we'll take it out since you're not stipulating to it, but we want you to know that we still may rely upon it at sentencing. So he was at least on notice that if he wanted to prevent the government from doing so, which I think is something we cannot do because of our unwavering obligation to produce all facts to the Court, he at least could have engaged in plea negotiations then. The second point I'd like to make, Your Honor, when the government objected to the PSR in December 2021, telling the probation officer there was additional ammunition and magazines found in the defendant's home and the defendant came to us and said, we want you to withdraw that objection, we did so because, as we said, we did not meet them for our sentence recommendation. But then things changed in January 2022, when for the first time in his sentencing memorandum, this is Supplemental Appendix, page 52, the defendant debuted a story that does not appear in the stipulation of facts, does not appear anywhere else, claiming that his possession of a handgun was actually transitory, was fleeting. He said that the gun was in the co-defendant's SUV and he only possessed it insofar as he tried to hide it in the moments before his arrest. Then it became absolutely essential that the government bring forward the facts that actually that firearm is a 7.62x39mm rifle converted into a pistol with a high-capacity magazine. The next day in the defendant's home, what did the police find? Two additional high-capacity magazines and 100 rounds of ammunition for a 7.62x39mm firearm. But no firearm. The reasonable inference from that is that the defendant's possession of the firearm was not fleeting, as he said in his sentencing memorandum, was not passive, as my friend just said in her oral argument, but that it was indeed his weapon. And that's borne out by the co-defendant's sentencing memorandum, where he said, Rosa is the one that brought the gun to my car and I need to be more selective about who I let into my car. Counsel, can I move you? I understood that argument from your briefing. Can I move you to the reliability issue? Because one thing I wasn't clear from your briefing, I thought you were suggesting there wasn't really a hearsay problem at all, and that's the point that I couldn't quite understand because it seems to me that you wanted the court to look at the statements and conclude they were true, that the ammunition belonged to the defendant. So I'm not sure I follow your non-hearsay argument. Could you explain? I have a question. So our argument to that is the defendant… Well, I'd like to actually make one very important point. There is nothing in the record indicating that the court relied upon Rosa's brother's statement to the police. And I want to underscore that because my friend got up and he said that the court relied upon that statement in order to make its upward variances. That's not true. If you look at the court's sentencing… And Judge Rickman, I won't get to answering your question. If you look at the court's sentencing explanation at the revocation hearing, the court does not once mention the brother's statement. If you look at the judge's sentencing explanation at the sentencing proceeding for the new case, the court recites it when it goes through the facts in the record. But as this court has repeatedly said in Colón Cordero, in Reyes Correa, in Flores Náutero, the mere fact that the court recounts a fact in its sentencing explanation is not sufficient for this court to find that it applied or relied upon that fact in its sentence. The court needs to do so explicitly. And here there is no explicit reliance upon the defendant's brother's statement. And if the defendant wants to come up on appeal and say that there's a claim of error based upon that, he needed to object below so that the court could say either yes, I am relying upon it, or no, I didn't. And as Judge Hamilton pointed out, the court did not have to rely upon it because even without that statement, the fact that the ammunition was the same – sorry, that the caliber of the ammunition and the gun magazines were the same as the gun that the defendant was arrested for possessing the day before provided ample basis. You identified my question, not my position. Oh, sorry. I did not mean to say your position, Your Honor. Counsel, but it seems to me that it would be fair to be concerned if the judge recites a fact that is actually incorrect. So can you address the hearsay issue? Yes. So our first position is that when the defendant says that the statement was unreliable, that itself is not an attack on the statement having been made. The defendant agrees that the statement was made and that the ammunition and magazines were picked up from his house. So there was no factual controversy over that. As for whether or not the statement should be considered hearsay, because the defendant did not object to the substance of the statement that was made, the ammunition and magazines were found in his home, the court, under Rule 32, Crime 3A, could simply accept those two things from the PSR. And there thus wasn't a hearsay statement. There was no witness sat down. There was no hearsay statement admitted. That was simply a fact that the court could rely on. If I could try another approach. Counsel, I'm sorry. Again, I just don't really follow that argument. You wanted the judge to assume that what was said was correct. I mean, that is what the government wanted, that the ammunition belonged to the defendant. I don't understand what you're saying about the fact that it was just said is all that we're talking about. That's really not what the government wanted here. I would disagree with that. On what ground? Did you not want to prove that the ammunition belonged to the defendant? Yes, we did. And this is the evidence you introduced to prove that, right? But if you see, what we did is we were providing evidence showing that the statement was said. I don't think you're going to find in the record or in our files anything where we say, by the way, you should credit the statement. Do you regularly point to statements that you think are untrue for the courts to rely on? What we were doing is we were simply— How is the fact that the statement was made even relevant if you're not offering the truth of the matter, sir? Your Honor, I believe that the arguments below really centered on whether the statement was made, but I will set that aside. I'll set that aside right now. Assume that within the record we were arguing that the statement should be credited. Our argument for why it should be considered hearsay is that the defendant then had a right to confront his brother at the revocation hearing, because that's what the argument is. First, again, to point out, there's a conservation issue. When the defendant said that he wanted to cross-examine his brother, he did it at the very beginning of the hearing, where he said, I want to cross-examine any witnesses here. And there were no witnesses there. He then later, before he was revoked, said he wanted to cross-examine his brother because the brother's statements were unreliable. But again, that was before he was revoked. And you'll actually see, if you look at it, when he talks about, I want to cross-examine him— Let me, as I was going to say, have to object. Well, before I ask. So the reason why, Your Honor, is in Colombo-El Donato, this court recognized that there are two separate phases of a revocation hearing. There's the guilt phase and the sentencing phase. And the court said later, in Torre Santana, it's an open question in the circuit whether the Rule 32.1 confrontation right applies to the sentencing phase. And indeed, it noted that there's a circuit split. The Tenth Circuit said that the confrontation right does not apply to the sentencing phase. The Ninth Circuit said it did. Now, I know that my friend points out that the Fourth Circuit, in Combs, found on a plain error review that the confrontation right applied to the sentencing phase. But I know two things about that case. First of all, the Fourth Circuit panel called into question the splitting apart of a revocation hearing into a guilt phase and sentencing phase. They said that was the government's position. They put stare quotes around it. And then, eventually, they found that there wasn't plain error on the third on the plain error review. The defendant couldn't show— Counsel, how does this relate to your preservation argument to go back to Judge Campbell's question? The objection was raised repeatedly. Why was it not enough to preserve? Let's put aside circuit splits. Because he raised the objection only during the guilt phase of the hearing. And he made it clear when he raised the first objection and he said, I want to cross-examine any witnesses here, he phrased it in terms of— And I'm quoting you on this. Is there any case suggesting that he has to rename the objection again for preservation purposes? Well, yes. Because when he raises the objection, and his quote is, he wants to cross-examine any witnesses here, and then he says, the witnesses that the government may present to establish the violations. That's his precise quote on appendix page 247. So when he says that he's raising his objections for the witnesses who established violations, that is the guilt phase. That is whether or not he committed violations. But later when it comes to the sentencing phase, he does not re-raise the objection at the very end of the proceeding. He raises an objection saying, I think what happened here is unreasonable because there is no reason not to call any witnesses. I understand your argument. I guess what I was asking is, do you have a case that says that for preservation purposes you have to remake the objection at the beginning of the sentencing phase? Well, sure. It follows from the basic case law of the United States against Soto. Soto is one that this court often relies upon, which is that when you make a specific procedural objection, that procedural objection only preserves that one thing. You cannot then use it to argue that you preserved a separate objection. And insofar as this court has said that there are two distinct phases of a hearing. So you're putting two things together. That's what I'm asking. You don't have a case that says, specifically in this context for preservation, you have to repeat the objection. I believe Torres on time. Torres on time because that was a case in which the defendant argued about hearsay statements coming in, but he did so during the guilt phase. And this court found that he didn't preserve the issue for the sentencing phase because he didn't later re-raise the objection to argue that the sentence was too long. If I recall this record correctly, counsel, at the end, near the end of the hearing, the government asked Judge Misosa to disclaim reliance on this hearsay material in finding the violation of his studies. And he chose not to do that. Isn't that a pretty clear sign that he relied upon this hearsay material in finding the violations? I will grant you, you've got other facts sufficient to support the reputation findings, but we've got the district judge telling us, in effect, yeah, I did rely on that material in the so-called guilt phase of the reputation. I think that's a reasonable reading of the record, Your Honor. And I'd also, I'd just like to note, my friend takes that as a concession that there's a Rule 32.1 error. Actually, what the prosecutor said is we'd like to withdraw or ask the court not to rely upon any of that evidence because we want to prevent there being any issue on appeal. That's very different from conceding an error. I understand that. Can I ask you a question? Let's assume those statements are hearsay for the sake of the sentence being made on the reputation. I know that's not your position to assume they're hearsay. What is your best argument that those statements are reliable? So the best argument for... Or sufficiently reliable, maybe. So that, of course, presumes that the court relied upon the statement, which we can test. But the best argument for saying that they're reliable, it's twofold. On the one hand, if you look at Santiago Colón, this court held that a hearsay statement was reliable because it was set forth in police reports. The individual was interviewed by police officers and since that was set forth in the police report and set forth in the PSR, and they weren't objecting to it, it was sufficiently reliable. Number two, I'd also point to the fact that the statement was reliable insofar as the defendant's brother saying that the extra ammunition and magazines were rosas was fully consistent with the fact that rosa was arrested the time before with possessing a rifle converted into a pistol of the exact same caliber. And there is nothing in the record about the codependent possessing extra ammunition of the exact same caliber. There's nothing in the record about the defendant's brother possessing a firearm of the exact same caliber. And so the fact that the brother stated something that seems fully consistent with the defendant's conduct is another kind of reliability. If this panel has no further questions, I know there are many other things there, they simply rely upon or agree to ask you to affirm the challenge sentences. Thank you. Thank you, counsel. At this time, would counsel for the appellant please return to the podium, identify yourself again, and begin your three-minute rebuttal. Good morning, Kevin Lerman once again on behalf of Mr. Rosa Borges. I would like to just briefly address the hearsay issue here. If we look at the court's sentencing pronouncement, Appendix 98, we see the court stating, during the search, Mr. Rosa's brother indicated that the items belonged to Mr. Rosa. That's a statement offered for its truth and relied on by the court. There's no other reasonable view of the record on that point. The government told this court that the reason that it submitted these 99 additional rounds, the allegations, was because of an affirmative and unwavering duty. That's an explanation that emerges outside of the sentencing record, and this went back and forth. We see the stated reason for the government submitting this material, and the government submitted this material in support of the sentence it was asking for. It made a determination to affirmatively submit it, and if the government had such an affirmative duty, it could have never withdrawn its support for Paragraph 13. We also see both parties discuss the case of Villegas Cabrera, which addresses the government's obligation around less provable facts, disputed facts, and that can be left to the parties' discretion. Mr. Levin, can I ask you, if we were to agree with you that the use of the brothers' statements in both the sentencing under Rule 32 and the revocation of Rule 32.1 was reversible, should we, or would we need to, resolve your accusations that I wanted to bring to the court? That depends how this court chooses to remand. The court's remand authority is very broad, and it's in the interest of justice. We've requested that the court remand with instructions to impose sentences within the guideline range, which are now reduced after November 1st. If that were the remand, then I don't think that the court would have to resolve. I think it should resolve these issues. If there are further proceedings, then I think all the issues should be resolved, because as the case of Garcia, which we cited on reply, states, or what we cite that for, is that it's difficult, if not impossible, to see how someone could get a specific performance after the government's prosecution in this case. Thank you. Thank you, counsel. That concludes argument in this case.